IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

RONALD BIFANI,                                                      Case No.: 8:12-bk-00562-MGW

      Debtor.
_____/

SHARI S. JANSEN, as Chapter 7

Trustee,
      Plaintiff,
vs.                                                                Adversary No. 8:12-ap-00288-MGW

ARLENE M. LAMARCA,

      Defendant.
_____/

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      Defendant, ARLENE M. LAMARCA, by and through the undersigned counsel, and pursuant to Fed.R.Bankr.P. 7056, hereby responds to the Motion for Summary Judgment filed by Shari S. Jansen, Chapter 7 Trustee, and seeks an order denying the Motion for Summary Judgment by Shari S. Jansen and as grounds therefore states:

Standard of Review

      1. A party seeking summary judgment bears the burden of proving that no genuine issue of material fact exists for trial and the movant is entitled to judgment as a matter of law when the evidence is viewed in the light most favorable to the nonmoving party. Dalton v. FMA Enterprises, Inc., 953 F. Supp. 1525, 1526 (M.D. Fla. 1997).

Factual Background

      2. On January 17, 2012 the debtor filed his Chapter 7 bankruptcy petition. Prior to June of 2009 Bifani was the owner of two parcels of real property. The two parcels were Lot 2, Angler Mountain Ranch, Sub.2, a/k/a 988 Bald Eagle Road, Silverthorne, Colorado, hereafter referred to as "Lot 2", and Lot 4, Eagles Nest Golf Course, Filing #1, a/k/a 1400 Golden Eagle

Road, Silverthorne, Colorado, hereafter referred to as "Lot 4".

    3.  On June 19, 2009, Bifani transferred Lot 2 and Lot 4 to Arlene Lamarca, his major creditor.

    4.  This adversary proceeding was commenced by the Trustee, Shari Jensen, on April 11, 2012, asserting that the transfers to Lots 2 and 4 to Arlene Lamarca constituted fraudulent transfers.

Argument

    5.  This Court should deny summary judgment against the defendant because the Debtor, Ronald Bifani, was not insolvent on the date of the transfers, or for a significant period thereafter.    6.  In his affidavit filed on January 22, 2013, Bifani stated that "On the date of the transfers, I had $114,839.73 in funds on deposit in my banking accounts".

    7.  Referring to the date of the transfers, he stated that at that time, "my only significant liquidated, undisputed, and noncontingent debt was $53,543.14 which I owed to Wells Fargo for a credit line and a credit card". His affidavit states that all other claims against him were disputed. There was some disputed medical debt totaling $3,447.00 , and there were two large claims which he asserts were disputed, unliquidated, and contingent in June, 2009: the claims of Janusz and Magdalena Fillman and the claim of Richard Davis.

    8.  Bifani denied owing anything to the Fillmans, who had filed a suit against him as a result of a disputed lease/option agreement. In his affidavit, Bifani explained that all the disputed rents were transmitted to his attorney, Thomas Fitzgibbons, Esq. to be placed in escrow pending resolution of the dispute and that these funds were ultimately placed into the registry of the state court in Sarasota. Although the Fillmans claimed that Bifani caused some damage to the Fillmans' home during his time of residence in the property, Bifani denied owing them a dime.

    9.  With regard to the claim of Richard Davis, the only evidence in the record is that:

a) Davis ultimately obtained a judgment against Bifani for $166,000  nearly 2 ½ years

after the transfers, due largely to the prejudgment interest which had accrued under Colorado law for the ten year period of litigation between Davis and Bifani;

     b)  Davis' case against Bifani was dismissed twice, but then was reinstated on appeal each time;

     c)  Davis' case was in inactive status, from the time of the second remand from the appellate court to the trial court, until the time of the transfers; and

     d)  Bifani, relying on the advice of his attorney who had advised Bifani that even if Davis ultimately won the suit, that any damages would be zero or minimal, did not believe that he was going to be hit with an adverse judgment against him by Davis.

     10.  According the Seventh Circuit in the case of <u>In re Xonics Photochemical, Inc</u>., 841 F.2d 198 (7th Cir. 1988), the proper procedure for the Court to follow in order to determine the amount of a contingent claim, is to value the contingent liability by discounting it by the probability that the contingency will occur and the liability will occur. According to the Court, "the "liability must be reduced to its present or expected value before a determination can be made whether the firm's assets exceed its liabilities". <u>In re Xonics</u> <u>Photochemical, Inc</u>., *supra*, page 200.

     11.  Unless the Fillman's claim or Davis' claim, or both combined, exceed more than $60,000.00, once each is reduced to its respective expected value on June 19, 2009, the Trustee will not carry her burden of proof that the Debtor was insolvent. There is a genuine issue of material fact in this case as to whether Bifani was insolvent in June of 2009.

     12.  The Court should also deny summary judgment because Arlene Lamarca was a creditor of Ronald Bifani, and the transfers were made to Lamarca in exchange for a reduction of the Bifani's indebtedness to Lamarca, resulting in reasonably equivalent value being given for the property.

     13.  There is no question that Lamarca was owed significant sums of money by Bifani. According to her affidavit, she was owed $171,648.78 from the sale of her property at 207 North

Ridge Street. She stated that Mr. Bifani also owed her $450,109.01 for a line of credit which she permitted him to take out on the property at 207 North Ridge Street. In addition, she stated that Mr. Bifani owed her more than $131,000.00 for 2 loans which she had provided to him in the form of cashier's checks.

14. The Trustee argues that Lamarca cannot use the obligations which relate to the 207 N. Ridge Property as part of the value exchanged, because that property had been formerly owned by Bifani before being transferred to Lamarca in 2006. She claims that this too was a fraudulent transfer. But she has offered no proof from the record to sustain this conclusion. Lamarca had obtained the 207 N. Ridge property 3 years before the transfers of Lots 2 and 4. If Bifani was financially solvent in 2006, he could deed his property to whomever he wants, whether it be by gift, sale, or any other means. What evidence has the Trustee offered that Bifani was insolvent in 2006? What the record does show is that Bifani was active as a builder in the year 2006, and other than the fact that litigation had been going on for more than 6 years at that time, there is no evidence showing that Bifani was insolvent or that the 207 N. Ridge Property had been fraudulently transferred.

Trustee's Argument

15. The Trustee argues primarily that, although there is no direct proof, that under the factors listed under §726.105(1)(a), Florida Statutes, that there are certain badges of fraud present from which an inference of fraudulent intent can be inferred. However, of the various factors cited by the Trustee, only one of those, the fact that Bifani had been sued, is undisputed. Even that factor is mitigated by the circumstances which were present in the Davis litigation with Bifani.

16. The following factors *are not* present in this case.

    a. The defendant was not an insider.

    b. The debtor did not retain possession of Lots 2 or 4 after they were transferred.

    c. The transfers were a matter of public record, and therefore were not hidden or

concealed

   d. The debtor did not transfer substantially all of his assets, as he still had nearly $115,000 in his banking accounts after the transfers.

   e. The debtor did not abscond.

   f. The debtor did not remove or conceal any assets.

   g. The debtor was not insolvent and did not become insolvent as a result of the transfers.

   h. The transfers did not occur shortly before or shortly after a substantial debt was incurred.

   I. The Debtor did not transfer the essential assets of the business to a lienor who then transferred the assets to an insider of the debtor.

17. The other remaining factor, the issue of whether the value of the consideration received by the debtor was reasonably equivalent to the value of the assets transferred, is vigorously disputed.

18. The Trustee asserts that burden of proof with regard to fraudulent intent can be shifted to the defendant. First, the defendant denies that the burden of proof with regard to fraudulent intent can ever be shifted from the plaintiff to defendant. Plaintiff always carries that burden of proof. Second, while there may be some burden of production on the part of Defendant, this would only occur after the Trustee has first established that a transfer had been made without adequate consideration. However, the issue of whether there was adequate consideration is itself one of the areas of primary dispute in this case. Therefore, there is no shifting of either the burden of proof or the burden of production in this case.

19. The Trustee asserts that there is the existence of at least six badges of fraud in this case. Defendant counters that there are none, as set out below.

20. <u>Functional Insider</u>. The Trustee concedes that Lamarca is not an insider under Florida's Fraudulent Transfers law, which limits the definition of an insider to someone who is a

relative. §726.102(7). Because of this, the Trustee argues that Lamarca, admittedly a friend of Bifani, is a "functional insider. However, none of the cases cited by the Trustee apply to this case because they either involve an "insider" who was a relative or is a pre-1987 case. (Florida's Uniform Fraudulent Transfer Act was enacted in 1987)

21. <u>Retention of Possession or Control</u>. The Trustee cannot establish this factor since Bifani did not live in or possess either Lot 2, which is merely an unimproved lot, or Lot 4, which was unquestionably sold to a third party with no relation to either Bifani or Lamarca.

22. <u>Pursuit by Davis</u>. While it is true that Davis was pursuing Bifani at the time of the transfers, and had been doing so for more than 10 years, there are some unusual circumstances which mitigate this factor in Lamarca's favor. The first mitigating factor is the length of the suit itself. The second mitigating factor is that the Davis suit, had been dismissed, not once, but twice, before being reinstated by the Colorado Court of Appeals.. Third, the case remained inactive for more than nine months after being returned to the trial court. And fourth, there was no *immediacy* in the lawsuit relative to the time of the transfers. In other words, there was no pending judgment or adverse ruling that was about to impact Bifani, when the lots were transferred. It is also important to note that throughout the more than 10 years of litigation, Bifani kept buying, building, and selling properties.

23. <u>Transfer of Substantially All Assets</u>. As Bifani had nearly $115,000.00 in funds on deposit in his banking accounts after the transfers, this factor is clearly not present.

24. <u>Lack of reasonably equivalent value</u>. The Trustee concedes that both Lamarca and Bifani assert that nearly $1 million was owed by Bifani to Lamarca. Further, Lamarca asserts that
Bifani received credit for the $450,000 and $171,000 obligations which were related to the 207 North Ridge property. With the inclusion of the payment of the $242,700 mortgage to Millennium Bank, the total debt forgiveness was $863,700.00 which is approximately 89% of the value of the property transferred. Most courts in the Eleventh Circuit follow the 70% rule in

determining whether or not reasonably equivalent value has been given. There is a genuine issue of material fact with regard to this factor.

25. <u>Insolvency</u>. There is clearly a genuine issue of material fact regarding the factor of insolvency. Given the large amount of cash that remained on hand and the fact the liquidated, undisputed, and noncontingent debt was just over $50,0000, this issue will need to be determined at trial based on the present expected amount the Court determines should be given to the claims of Davis and the Fillmans as of June 2009. As stated above, under the analysis set forth by the Court in <u>In re Xonics</u> <u>Photochemical, Inc</u>., *supra*, the liability for each claim must be reduced to its present or expected value before a determination can be made whether the debtor's assets exceed his liabilities.

Constructive Fraud

26. An essential element of constructive fraud is that the Trustee must prove "insolvency".

27. The correct standard, under §726.103(1), Florida Statutes, is that the "debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation".

28. As stated earlier, the record shows that Bifani still had nearly $115,000.00 in his various banking accounts after the transfers were made.

29. Again as stated above, since the debtor had only a little more than $50,000 in undisputed, liquidated, and noncontingent debt at the time of the transfers, one of the key issues in this case is the amount to be estimated or the discount calculated for the two larger claims: the claims of Richard Davis and the Fillmans.

30. Unless the Fillman's claim or Davis' claim, or both combined, exceed more than $60,000.00, once each is reduced to its respective expected value on June 19, 2009, the Trustee will not carry her burden of proof that the Debtor was insolvent.

31. Defendant contends that there is nothing in this record upon which the Court can

make this assessment. This is a determination that will only be able to be made at the trial.

32. In addition, the Trustee must show that the Debtor did not receive reasonably equivalent value in exchange for the transfers. Essentially the Court must make a comparison of what 'what went out' with 'what was received'.  In re Dealers Agency Services, Inc., 380 B.R.608 (Bankr. M.D. 2007)  In this case, the Trustee cannot show the value of 'what went out' with regard to Lot 2, because there is nothing in the record which shows the value of Lot 2. There has been no appraisal obtained by the Trustee, and no expert witness has been listed by the Trustee who can give an opinion of the value of the property. Without establishing the value of 'what went out', Trustee cannot satisfy her burden of proving constructive fraud. See Dealers Agency Services, *supra*, page 622

33. With regard to Lot 4, the issue of whether or not reasonably equivalent value was given, is a disputed issue of material fact, as discussed above.

Equitable Lien

34. Under the case of Havoco of Am., Ltd. v. Hill, 790 So.2d 1018 (Fla. 2001), a court can impose an equitable lien on a Florida homestead which was purchased or improved with funds obtained through *egregious conduct*.

35. The cases cited by the Trustee are all pre- Havoco.  Cases which follow Havoco typically involve such types of egregious conduct as converted of funds or stolen funds. See In re Mazon, 387 B.R. 641 (M.D. Fla. 2008); Williams v. Aloisi, 271 B.R. 676 (M.D Fla. 2002). There is nothing in the record would support the imposition of an equitable lien in this case.

36. The Trustee bears the burden of proving that no genuine issue of material fact exists for trial.  Nothing alleged in the Trustee's motion alters the application of that rule, Lamarca disputes the facts alleged in the motion and submits that the Trustee's allegations are insufficient, unsupported and not properly admissible or authenticated.

CONCLUSION

37, Accordingly, there is a genuine issue of material fact as to whether Bifani was

insolvent at the time of the transfers, and there is a genuine issue of material fact as to whether reasonably equivalent value was given for either of the properties.

WHEREFORE, Arlene LaMarca respectfully requests the Court to enter an order denying Shari S. Jansen, Chapter 7 Trustee's motion for summary judgment, entering judgment accordingly, and granting such other and further relief as is equitable and just.

 /s/ Benjamin G. Martin
Benjamin G. Martin
Attorney at Law
1620 Main Street, Suite One
Sarasota, Florida 34236
(941) 951-6166
Florida Bar No. 464661

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing Response to Motion for Summary Judgment has been furnished electronically or regular U.S. mail to Shari S. Jansen, Chapter 7 Trustee, c/o Lori V. Vaughn, Suite 2700, Bank of America Plaza, 101 East Kennedy Blvd., Tampa, FL 33602 this   24th   day of January, 2013.

 /s/ Benjamin G. Martin
Benjamin G. Martin
Attorney at Law
1620 Main Street, Suite One
Sarasota, Florida 34236
(941) 951-6166
Florida Bar No. 464661